**Opinion issued April 2, 2026**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00849-CV

————————————

**JOHN S. BYNON M.D., Appellant**

**V.**

**SUSIE GARCIA, AS WRONGFUL DEATH BENEFICIARY OF RICHARD MOSTACCI, DECEASED; DIANELYS CORRALES, AS WRONGFUL DEATH BENEFICIARY OF DANIEL RODRIGUEZ ALVAREZ, AND ROBERT OSUNA, JR., AS WRONGFUL DEATH BENEFICIARY OF ROBERT OSUNA, LAURA WHITTINGTON, INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE OF JERRY WHITTINGTON, NICOLE LLOYD, ELIA COMBS, MAXINE WHITTINGTON, EDEN WHITTINGTON, AND JOSEPH WHITTINGTON, Appellees**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-26227**

---

## CONCURRING AND DISSENTING OPINION

I join the Court's opinion in its entirety with the exception of Part III, in which the majority concludes that the plaintiffs cannot be claimants as they have not yet asked for damages. The TMLA defines a claimant as "a person . . . *seeking* or who has sought *recovery of damages* in a health care liability claim." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(2) (emphasis added).

The plaintiffs admit that they will be seeking damages as the suit proceeds—and, indeed, what would be the point of this lawsuit if they did not want monetary compensation for the death of their loved ones?—even though they have not yet filed a court document announcing this intention on the record. The question this Court must answer is this: "At what point is a plaintiff seeking damages, such that they become a claimant under the Act?" The plaintiffs, and the majority, believe that the correct answer is "when they file a pleading asking for damages." This reading is consistent with the language of the statute and also has the benefit of being a clear and administrable rule. Courts would know when the expert report is due because they can count the days from the filing in which an HCLC claimant asks for damages. This is a reasonable reading of the plain language and an administratively sound approach for the court to take.

I write separately, however, to note that this apparently reasonable reading has the disadvantage of creating an environment for artful pleading that avoids the

2

strictures of the statutory scheme. Under the majority's reasoning, a defendant can be hauled into court on an HCLC under the guise of injunctive relief and be subject to discovery and trial, just so long as the plaintiff never actually asks for damages. The plaintiff essentially has the opportunity to build their tort case outside the TMLA structure, then add a claim for damages in a subsequent pleading. I seriously question whether this is what the Legislature intended when passing the TMLA.

The Texas Supreme Court has created a presumption that if a claim is based on facts that *could* be a Health Care Liability Claim, it already is one, regardless of how it is styled or presented.[1] Texas courts should similarly apply a presumption that if plaintiffs bring an HCLC claim, and the underlying facts *could* support a claim for damages, even if the word "damages" has not yet appeared in a pleading, then those plaintiffs are "claimants." To do otherwise creates a loophole that potentially upends the entire statutory scheme.

With regard to Health Care Liability Claims, the Texas Supreme Court has specifically said that if the facts underlying a claim *could* support an HCLC, then the claim already is one: "claims premised on facts that *could* support claims against a physician . . . for departures from accepted standards of medical care . . . are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach

---

[1] *See Loaisiga v. Cerda*, 379 S.W.3d 248, 255–56 (Tex. 2012); *In re Jorden*, 249 S.W.3d 416, 421–22 (Tex. 2008).

of any of those standards." *Loasiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012); *see also In re Jorden,* 249 S.W.3d 416, 422 (Tex. 2008) (holding that petition for Rule 202 presuit deposition was an HCLC even though no claim had been filed against defendant asserting liability for injury).

The reason behind this expansive reading, according to the Texas Supreme Court, is that that "artful pleading and recasting of claims is not permitted." *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010). "[I]f the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements." *Id.* at 197.[2] "The gravamen of a claim is its true nature, as opposed to what is simply alleged or artfully pled, allowing courts to determine the rights and liabilities of the involved parties." *B.C. v. Steak N Shake Operations, Inc.*, 512 S.W.3d 276, 283 (Tex. 2017).

The same reasoning should apply to "claimants." Particularly where, as here, a suit *admittedly* could become one for damages in the future, as plaintiffs' counsel

---

[2]     *See also CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 534 (Tex. 2016) (when determining whether claim is HCLC "we examine the underlying nature and gravamen of the claim, rather than the way it is pleaded").

stated at oral argument,[3] it should be treated as a claim for damages from the beginning. The only practical difference between the intervenors' case (which the majority rightly dismisses) and the plaintiffs' case is artful pleading.

This approach is consistent with that of appellate courts around the state, which have looked to the underlying nature of the relief sought. For example, when the State prosecutes a medical practice for statutory violations and seeks civil penalties, the State is not considered a "claimant" seeking damages.[4] Similarly, when a plaintiff seeks declaratory relief that a hospital lien is invalid, that plaintiff is not considered a "claimant" seeking damages because the plaintiff is disputing the hospital's claim for payment, not asking for compensation.[5]

The situation here is distinct from a State prosecution or a hospital lien, where the plaintiff is not seeking compensatory damages for departing from accepted standards of care. Here, we have a claim for injunctive relief to preserve medical records precisely as a prologue to a suit for damages. For this reason, I disagree with

---

[3]     Texas First Court of Appeals, Case No. 24-0849-CV, *John S. Bynon, MD v. Susie Garcia, Wrongful Death Beneficiary*, at 28:45 (YouTube, June 19, 2025).

[4]     *See Nazari v. State*, 497 S.W.3d 169, 181 (Tex. App.—Austin 2016), *aff'd*, 561 S.W.3d 495 (Tex. 2018); *State v. Emeritus Corp.*, 466 S.W.3d 233, 244, 248–49 (Tex. App.—Corpus Christi–Edinburg 2015, pet. denied).

[5]     *See McAllen Hosps., LP v. Gomez*, 2013 WL 784688, at *5–6 (Tex. App.—Corpus Christi–Edinburg Feb. 28, 2013, no pet.) (mem. op.); *Lopez v. Sosa*, No. 05-22-00295-CV, 2023 WL 3914553, at *7 (Tex. App.—Dallas June 9, 2023, pet. denied) (mem. op.).

5

the majority's reliance on *Lopez v. Sosa* (a hospital lien case). While *Lopez* does say that if a plaintiff only seeks declaratory relief and not damages, he is not a "claimant," the case also notes that the nature of the suit was not one against a health care provider for an injury due to negligent provision of services. Further, there was no suggestion that damages would ever be sought for negligent provision of services. Finally, *Lopez* is not binding precedent on our Court. Therefore, I would decline to follow *Lopez* here.

By contrast, our sister court has held that the duty to serve an expert report dated from the earliest pleading, even when damages were not pled until the plaintiff's fourth amended petition. *Mem'l Hermann Hosp. Sys. v. Ponce*, No. 14-14-00136-CV, 2014 WL 5685726, at *4 (Tex. App.—Houston [14th Dist.] Nov. 4, 2014, pet. denied). *Ponce* began as a petition for writ of mandamus to obtain medical records that a hospital refused to provide. *Id*. However, by the fourth amended petition, the plaintiffs expressly pled a claim for damages due to medical negligence. *Id*. Although they ultimately served an expert report, the Fourteenth Court of Appeals held that it was untimely because they became claimants on the date of the original petition for writ of mandamus.[6] *Id.*

---

[6] This case dealt with a prior version of the TMLA which version of the Act required the expert report to be served within 120 days of the filing of the plaintiff's petition, rather than the defendant's answer, but the reasoning holds.

Similarly, in *Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 289 (Tex. App.—Dallas 2008, pet. denied), the court of appeals found that Walrath could not avoid being a "claimant" by presenting what was essentially an HCLC as a breach of contract claim. *Id.* at 288. Walrath did not plead tort damages until the third amended petition, but the court of appeals found that the duty to file the expert report as a "claimant" was triggered at the first filing, when it was clear that the plaintiff alleged an HCLC. *Id.* at 289. Noting that waiting to plead tort damages was "merely another variation of the artful-pleading tactic that Texas courts have frequently condemned," the court concluded that the plaintiff's expert report was untimely, and the claim was dismissed. *Id.*

The precise issue here—in which pleaded claims that are plainly HCLCs have begun life as declaratory relief but have not yet metamorphosed into a suit for tort damages—appears to be a matter of first impression. One might suggest that this lack of precedent lends credence to the interpretation of such pleading as artful. Regardless, extending the rationale of *Ponce* and *Victoria Gardens* here, looking to the gravamen of the claim, and declining to wait until the plaintiff asks for damages to determine that plaintiff is a "claimant" under the TMLA is the most consistent approach with the greater thrust of the applicable precedent.

If the majority's seemingly quite reasonable rule is allowed to stand, then plaintiffs can get the very discovery needed to build their case under the guise of

injunctive relief while evading the TMLA safeguards. Faced with alternative interpretations consistent with the statutory language, we should err on the side of choosing the one that supports the statutory scheme as a whole.

Susanna Dokupil
Justice